UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS LEE WOODS,

       Petitioner,

v.                               Case No. 3:17-cv-707-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Thomas Woods, an inmate of the Florida penal system, initiated this action on June 14, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Woods challenges a 2013 state court (Duval County, Florida) judgment of conviction for trafficking in cocaine while armed with a firearm and possession of a firearm by a convicted felon. Woods raises three grounds for relief. <u>See</u> Petition at 6-33.[2] Respondents have submitted an answer in opposition to the Petition. <u>See</u> Respondent's Answer to Petition for Writ of Habeas Corpus (Response; Doc. 20) with exhibits (Resp. Ex.). Woods filed a brief in reply. <u>See</u> Petitioner's Reply Brief (Reply; Doc. 26). This case is ripe for review.

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On May 5, 2011, the State of Florida (State) charged Woods by way of Information with trafficking in cocaine while armed with a firearm (count one) and possession of a firearm by a convicted felon (count two). Resp. Ex. B1 at 9-10. Woods entered a negotiated plea of guilty on June 2, 2011, and agreed to provide substantial assistance in other criminal cases in exchange for a sentencing range of eight to fifteen years if Woods' cooperation led to the filing of prosecutable criminal cases, twelve to twenty years if Woods cooperated but no prosecutable criminal cases arose from his assistance, or twenty to thirty years if he violated the terms of his plea agreement. Id. at 18-22. On March 11, 2013, Woods, through counsel, filed a motion to withdraw his plea, alleging his former counsel did not give him a meaningful opportunity to read and review the plea agreement, which left him unaware of the details and consequences of his plea. Id. at 51-52. On May 21, 2013, the circuit court denied Woods' motion to withdraw his plea, id. at 68-72, and subsequently sentenced Woods to a term of incarceration of thirty years in prison, with ten and fifteen-year minimum mandatories to run concurrently with each other, as to count one and fifteen years in prison, with a three-year minimum mandatory, as to count two. Id. at 54-62. The circuit court ordered the sentence imposed on count two to run concurrently with the sentence imposed on count one. Id. at 59.

Woods appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Id. at 98. With the assistance of counsel, Woods filed an initial brief, in which he argued that the circuit court abused its discretions when it denied his motion to withdraw plea. Resp. Ex. B2. The State filed an answer brief. Resp. Ex. B3. On January 31, 2014, the First DCA per curiam affirmed Woods' conviction and sentences, without

issuing a written opinion, Resp. Ex. B4, and issued the Mandate on February 18, 2014. Resp. Ex. B5.

On September 16, 2014, Woods filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. C1 at 1-32. The circuit court dismissed this motion as facially insufficient and granted Woods leave to amend. Id. at 39-40. Woods filed three separate amended motions for postconviction relief pursuant to Rule 3.850 (Rule 3.850 Motions). Id. at 41-57, 61-81, 88-108. In doing so, Woods raised four allegations of ineffective assistance of counsel and one ground of newly discovered evidence in his Rule 3.850 Motions. Id. Woods alleged that his counsel was ineffective for failing to:  (1) inform him of the possibility of an entrapment defense prior to entry of his guilty plea; (2) move to dismiss based on entrapment; (3) investigate and present an entrapment defense; and (4) investigate the State's evidence as to count one. Id. Woods also alleged newly discovered evidence that the Florida Department of Law Enforcement (FDLE) made no reports in this case. Id. The circuit court denied the Rule 3.850 Motions on July 6, 2016. Id. at 114-21. Woods appealed, and the First DCA per curiam affirmed the denial of relief on November 7, 2016. Resp. Ex. C2. Woods moved for rehearing, Resp. Ex. C3, which the First DCA denied on December 29, 2016. Resp. Ex. C4. The First DCA issued its Mandate on January 17, 2017. Resp. Ex. C5.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Woods's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28 U.S.C. §
> 2254(b)(1), thereby giving the State the ""opportunity to pass
> upon and correct" alleged violations of its prisoners' federal
> rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887,
> 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v.
> Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438
> (1971)). To provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each appropriate
> state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal
> nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct.
> 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.  838, 845, 119 S. Ct.
> 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a

procedural default which raises a potential bar to federal habeas review. The United

States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a
> state prisoner's conviction and sentence are guided by rules
> designed to ensure that state-court judgments are accorded
> the finality and respect necessary to preserve the integrity of
> legal proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under which a
> federal court will not review the merits of claims, including
> constitutional claims, that a state court declined to hear
> because the prisoner failed to abide by a state procedural rule.
> <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546;
> <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's
> invocation of a procedural rule to deny a prisoner's claims
> precludes federal review of the claims if, among other
> requisites, the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is firmly
> established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v.
> Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179
> L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct.
> 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

9

> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception
> is exceedingly narrow in scope," however, and requires proof
> of actual innocence, not just legal innocence. Johnson v.
> Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more

likely than not that no reasonable juror would have convicted him' of the underlying

offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v.

Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual

innocence must be based on reliable evidence not presented at trial." Calderon v.

Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

of such evidence, in most cases, allegations of actual innocence are ultimately summarily

rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of

counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a
> conviction must show that "counsel's representation fell below
> an objective standard of reasonableness." [Strickland,] 466
> U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of
> ineffective assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range" of
> reasonable professional assistance. Id., at 689, 104 S. Ct.
> 2052. The challenger's burden is to show "that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth Amendment."
> Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable

> argument that counsel satisfied <u>Strickland</u>'s deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at
> 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Woods alleges that the circuit court abused its discretion in denying the motion to withdraw his guilty plea. Petition at 6-11. According to Woods, his counsel, Robert Shafer, affirmatively advised him that an entrapment defense did not exist in Florida and a co-counsel from the same firm, James Davis, later failed to advise him of the possibilities of such a defense. <u>Id.</u> at 6-7. Woods alleged the same in the motion to withdraw his plea, which the circuit court denied following an evidentiary hearing. <u>Id.</u> at 8. Woods asserts that the State only called Davis as a witness, but he made claims against both Shafer and Davis in his motion. <u>Id.</u> at 8-9. As such, Woods now contends that the circuit court's denial of his claim was unreasonable in light of the evidence presented at the hearing. <u>Id.</u> at 10-11. Woods notes that Davis could not recall whether he advised Woods about an entrapment defense and Woods maintains that his general

answers given at the plea hearing do not refute this claim because the circuit court never specifically inquired about an entrapment defense with him. Id.

Respondents contend this claim is unexhausted because, although Woods raised a similar claim in his motion to withdraw plea and appealed the denial of that motion, he never raised this claim as a federal issue. Response at 8-11. Instead, Respondents assert that Woods relied exclusively on state law. Id. In his Reply, Woods states that "[i]n the interest in [sic] judicial economy, and brevity, Petitioner concedes with [sic] Respondent's legal findings and conclusions pertaining to Ground 1." Reply at 1. Nevertheless, Woods asserts that his trial counsel was ineffective for failing to argue the federal nature of his claims in the motion to withdraw, and would like the opportunity "to object if the Court disagrees with the legal findings and conclusions of the Respondent and Petitioner asks this Court to apply the applicable laws and legal conclusions." Id. at 2.

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.3d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim

can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

Here, however, Woods never raised an independent claim of ineffective assistance of counsel for failing to argue federal claims in the motion to withdraw his plea. Therefore, Woods cannot establish cause to overcome this procedural default. See id. Based on Woods' concession that he did not exhaust and the lack of cause and prejudice to overcome this procedural default, relief on the claim in Ground One is due to be denied as procedurally barred. Moreover, even if this was a federal issue, as explained in further detail below, Woods' answers during his plea colloquy refute this claim and the facts of his case do not support an entrapment defense. As such, there is no reasonable probability that Woods would have forgone his plea deal and proceeded to trial had counsel advised him of an entrapment defense. Accordingly, Woods is not entitled to relief on his claim in Ground One.

## B. Grounds Two (A) - (C)

In Ground Two, Woods raises a total of four sub-claims, the first three of which concern an entrapment defense. According to Woods, counsel was ineffective for failing to:  advise him about the possibility of an entrapment defense (Ground Two (A)), move to dismiss the Information based on entrapment (Ground Two (B)), and investigate and present an entrapment defense (Ground Two (C)). Petition at 13-27. According to Woods, attorney Davis went over discovery materials with him and recommend that Woods should cooperate with law enforcement; however, counsel never informed him of the

14

entrapment defense. Id. at 13-14. Woods maintains that he lacked the predisposition to commit the crime charged in count one because he declined an informant's multiple, relentless offers to purchase and sell drugs over a two-month period before finally feeling pressured to participate in the offense. Id. at 14-15. Woods states that "[t]he informant persuaded Petitioner to participate in the alleged of [sic] offense by offering to help him distribute the cocaine to his (informant's) prospective buyers on the Southside areas of Jacksonville," while also assuring Woods that he could obtain multiple "kilos" of cocaine cheaper than the street-price. Id. at 25-26.  Additionally, he asserts that he had no criminal history of drug dealing, he was not engaged in unlawful criminal activity when the informant approached him, and there was no evidence that he was suspected of criminal activity. Id. at 22. As such, Woods argues that there was no specific ongoing criminal activity until the informant created one in order "to meet his substantial assistance quota." Id. Woods further alleges that law enforcement failed to closely monitor the informant's dealings with Woods after he became a target and did not investigate his prior drug history. Id. at 22-23.

Woods raised similar claims in his Rule 3.850 Motions. Resp. Ex. C1 at 93. In denying these three claims, the circuit court explained:

> Defendant now attempts to couch the barred substantive claim regarding counsel's lack of advice or misadvise on an entrapment defense as three separate grounds of ineffective assistance of counsel. This Court finds such Grounds barred. See Zeigler v. State, 116 So. 3d 255, 258 (Fla. 2013) ("In Florida, collateral estoppel prevents the same parties from relitigating issues that have already been fully litigated and determined."); Zack v. State, 911 So. 2d 1190, 1210 (Fla. 2005) ("It is well recognized that a defendant may not couch a claim decided adversely to him on direct appeal in terms of ineffective assistance of counsel in an attempt to circumvent the rule that postconviction relief

proceedings may not serve as a second appeal." (citations omitted)); <u>Arbelaez v. State</u>, 775 So. 2d 909 (Fla. 2000) (state defendant "may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel.").

Moreover, this Court agrees Defendant's plea colloquy and written plea agreement show Defendant acknowledged being advised regarding all potential defenses, that he had no further questions for counsel and was satisfied with counsel's answers, and did not request any additional work or investigation from counsel. Additionally, this Court notes that while entrapment may have been available as a defense, it would not constitute a basis for a motion to dismiss, and Defendant would not have been entitled to relief upon such a motion. <u>See</u> <u>Schoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010) ("[C]ounsel cannot be deemed ineffective for failing to make a meritless argument.").

<u>Id.</u> at 116-17 (record citations omitted). The First DCA per curiam affirmed denial of relief on these claims without a written opinion. Resp. Exs. C2; C5.

To the extent that the First DCA decided these claims on the merits,[7] the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Woods is not entitled to relief on the basis of these claims.

Nevertheless, even if the First DCA's adjudication of these claims is not entitled to deference, the claims in Grounds Two (A), Two (B), and Two (C) are meritless. "A plea

---

[7] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." <u>Scheele v. State</u>, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). Furthermore, "[a] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations." <u>Kelley v. State</u>, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013). <u>See also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). By entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. <u>Smith v. State</u>, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing <u>Davis v. State</u>, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." <u>Id.</u>

In Florida, law enforcement commit entrapment:

> if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

§ 777.201(1), Fla. Stat. Florida recognizes two theories of entrapment, one being "'objective entrapment,' which concerns law enforcement conduct amounting to a denial of due process," and the other being "'subjective entrapment,' which focuses on whether the defendant was predisposed to commit the crime." <u>Jones v. State</u>, 114 So. 3d 1123,

1126 (Fla. 1st DCA 2013). To establish objective entrapment, law enforcement conduct must be so outrageous that it offends decency or a sense of justice. State v. Laing, 182 So. 3d 812, 816 (Fla. 4th DCA 2016). Under the objective entrapment theory, courts must limit their consideration to the conduct of law enforcement or their agents. Id.  A common thread in objective entrapment cases is affirmative and unacceptable conduct on the part of law enforcement or its agent, which entices the commission of a crime. Id. (quoting Bist v. State, 35 So. 3d 936 (Fla. 5th DCA 2010); Schwartz v. State, 125 So. 3d 946 (Fla. 4th DCA 2013)). Notably, an alleged failure to properly supervise a confidential informant, standing alone, does not amount to objective entrapment. State v. Lopez, 908 So. 2d 484, 485 (Fla. 4th DCA 2005).

Subjective entrapment, on the other hand, is established through a three-part test:

> 1) "whether an agent of the government induced the accused to commit the offense charged[;]" 2) if so, "whether the accused was predisposed to commit the offense charged[;]" and 3) "whether the entrapment evaluation should be submitted to a jury."

Laing, 182 So. 3d at 818-19 (quoting Munoz v. State, 629 So. 2d 90, 99-100 (Fla. 1993)). A defendant must establish the first prong by a preponderance of the evidence, and a court should address the remaining prongs only after a defendant has done so. Id. at 819. Notably, a defendant does not establish inducement by demonstrating law enforcement merely solicited or created opportunities to commit crimes. Senger v. State, 200 So. 3d 137, 144 (Fla. 5th DCA 2016) (quoting Marreel v. State, 841 So. 2d 600, 603 (Fla. 4th DCA 2003)). Instead, "[i]nducement is defined as including 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas

based on need, sympathy or friendship.'" Rivera v. State, 180 So. 3d 1195, 1197 (Fla. 2d DCA 2015) (quoting State v. Henderson, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007)).

The arrest and booking report in Woods' criminal case reflects that Woods had requested to purchase a one-kilogram brick of cocaine from the confidential informant. Resp. Ex. B1 at 2. Woods wanted to see and test the cocaine before purchasing, so Woods met the informant in a hotel room where Woods inspected one of the bricks of cocaine. Id. Woods stated he wanted to buy the cocaine for $29,000 and left the hotel room to get the money. Id. About two and half hours later, Woods returned to the hotel room with a black bag and $25,000 in cash. Id. Woods gave the informant the money and the informant gave Woods the cocaine, at which point a law enforcement "take-down team" arrested Woods, who had a 9 mm handgun in his possession. Id. Notably, the transaction was audio and video recorded. Id.

At the plea hearing held on June 2, 2011, Woods admitted that he was guilty of these charges. Id. at 110. Woods represented to the circuit court the he had read and understood the plea form, and that he reviewed the plea form with his attorney, who answered all of his questions to his satisfaction. Id. at 110-11. He further represented that he understood he was giving up his right to a jury trial and all the attendant rights that go along with that right. Id. at 112-14. The circuit court specifically asked Woods if he had sufficient time to discuss this case with his attorney, and he replied that he did. Id. at 117-18. Additionally, the circuit court inquired as to whether there was any outstanding investigative work that he asked his counsel to complete that had not been completed, such as interviewing witnesses or reviewing discovery. Id. Woods answered there was none left to accomplish. Id.

On May 2, 2013, the circuit court held a hearing on Woods' motion to withdraw his plea. Id. at 123-62. Woods testified at the hearing that attorney Shafer told him there was no entrapment defense in Florida and that he did not read the entire plea agreement. Id. at 128-30. Davis also testified, stating that Woods told him after their first encounter that he wanted to cooperate with law enforcement. Id. at 139-40. Davis represented that he went over the facts of the case and discovery materials with Woods on multiple occasions. Id. at 140. After seeing the video-recordings from the drug transaction, Woods' demeanor changed, and he wanted to execute the plea agreement. Id. at 141. According to Davis, he and Woods reviewed the entire plea agreement. Id. at 142-43. Notably, Davis testified that he did not recall Shafer ever visiting Woods at the jail and that only he, Davis, handled Woods' court appearances and was in control of the legal decisions made in the case. Id. at 144. When asked on cross-examination if he ever discussed an entrapment defense with Woods, Davis stated that he did not recall. Id. at 146.

Based on this record, Woods' sworn representations to the circuit court refute his claims of ineffective assistance of counsel. Woods affirmatively represented to the circuit court through his oral answers and his signature on the plea form that he discussed the plea, the facts of the case, discovery materials, and all possible defenses with his attorney. He likewise stated that he understood he was giving up his right to a trial and to present evidence, and, most notably, testified that he was in fact guilty of these offenses. Accordingly, Woods is bound by his sworn representations and is not entitled to federal habeas relief on these claims. See Kelley, 109 So. 3d at 812-13; Blackledge, 431 U.S. at 74; Smith, 41 So. 3d at 1040.

Moreover, because the arrest and booking report contradicts his factual assertions, entrapment was not a matter that could have been raised via a motion to dismiss. See Gennette v. State, 124 So. 3d 273, 274-75 (Fla. 1st DCA 2013) ("Where the factual circumstances of the case are not in dispute, the trial judge has authority to rule on entrapment as matter of law."). As such, counsel is not deficient for failing to raise an issue that would not have succeeded. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Finally, the Court finds that entrapment would not have been a viable defense for Woods given the facts of his case, and, therefore, rebuts his claim that but for counsel's failure to advise him of this defense, he would have proceeded to trial. Concerning objective entrapment, Woods has failed to provide any evidence of outrageous conduct on the part of law enforcement or its agent. See State v. Harper, 254 So. 3d 479, 484-85 (Fla. 4th DCA 2018) (collecting Florida and Federal cases finding no objective entrapment in scenarios involving reverse sting operations). Even assuming as correct Woods' version of events, without the showing of a threat or promise of exorbitant gain, an informant's repeated attempts to persuade a defendant to obtain or sell drugs does not constitute outrageous government conduct. See State v. Konces, 521 So. 2d 313, 315 (Fla. 3d DCA 1988). There were no such threats or promises here. To the extent Woods claims law enforcement failed to properly monitor the informant, this would still not form the basis of an objective entrapment defense. See Lopez, 908 So. 2d at 485.

Likewise, Woods has failed to demonstrate inducement on the part of law enforcement; therefore, he cannot establish subjective entrapment either. Law enforcement, through the informant, merely created an opportunity for Woods to commit an offense and did not coerce or promise him anything to commit the criminal act. See Rivera, 180 So. 3d 1197. Moreover, the facts, as relied on by the State, which were contained in the arrest and booking report and to which Woods admitted, reflect that Woods came to the informant and sought drugs on his own, demonstrating Woods' predisposition to commit the offense. In light of the above analysis, Woods had neither a viable objective nor subjective entrapment defense. As such, the Court finds there is no reasonable probability that Woods would have foregone his plea deal and proceeded to trial had his counsel informed him of an entrapment defense or investigated and defended the charges as Woods suggests. Woods' sworn testimony to the circuit court during his plea colloquy belies his argument of prejudice, as does the unlikelihood of success of an entrapment defense. Taken together, Woods cannot demonstrate prejudice. Accordingly, for the above stated reasons, relief on the claims in Grounds Two (A), (B), and (C) are due to be denied.

### C. Ground Two (D)

As Ground Two (D), Woods alleges that his counsel was ineffective for failing to investigate the State's evidence and the elements of trafficking in cocaine. Petition at 27-31. Specifically, Woods asserts that his counsel failed to investigate or challenge the authenticity and weight of the cocaine. Id. at 28. Woods maintains that the evidence was never chemically tested to establish its authenticity or weighed, but his counsel told him contrary information. Id.

Woods alleged a similar claim for relief in his Rule 3.850 Motions. Resp. Ex. C1 at 104-06. The circuit court denied this claim, writing in part:

> Counsel previously testified that he reviewed all of the evidence with Defendant. Defendant also acknowledged counsel reviewed the evidence with him. Counsel further testified that, once Defendant was shown the evidence, he was very motivated to negotiate with the State and enter a plea rather than proceed to trial.
>
> Additionally, by pleading guilty to an offense, a defendant waives his right to have trial counsel investigate or put forth a defense. Clift v. State, 43 So. 3d 778, 779-80 (Fla. 1st DCA 2010). "Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id. at 779. Pleading guilty, in effect, "render[s] any further investigation pointless." Stano v. State, 520 So. 2d 278, 280 (Fla. 1988). As Defendant pleaded guilty and acknowledged his satisfaction with counsel, he is now precluded from alleging counsel was ineffective for failing to pursue further investigation or defend against the charge. Further, Defendant acknowledged that by pleading guilty he was waiving his right to require the State to prove his guilt beyond a reasonable doubt.
>
> Lastly, within this allegation, Defendant contends that instead of challenging the State's ability to prove their case, counsel stipulated to a factual basis when there was no such basis. Particularly, Defendant asserts the State could not prove that the substance in question was cocaine. Stipulating to a factual basis is proper as long as there is sufficient evidence in the record to support the stipulation. Hall v. State, 603 So. 2d 650, 650 (Fla. 1st DCA 1992). Because the purpose of a factual basis for a plea is to ensure its accuracy and avoid mistake, the method for determining that factual basis is largely within the judge's discretion. Williams v. State, 316 So. 2d 267, 272-73 (Fla. 1975). The Court may rely on arrest and police affidavits to find a factual basis for a plea. Cuevas v. State, 770 So. 2d 703, 704 (Fla. 4th DCA 2000); see Saint Aime v. State, 723 So. 2d 874 (Fla. 3d DCA 1998); Blackwood v. State, 648 So. 2d 294 (Fla. 3d DCA 1995).
>
> Courts need not conduct a "mini-trial" to find a sufficient factual basis for a guilty plea, but may make reasonable

23

> inferences based on facts in the record that such a basis
> exists. Id. A trial court's failure to properly inquire about the
> factual basis for the plea "results in reversible error only where
> the defendant establishes he was prejudiced by the error."
> Sanchez v. State, 33 So. 3d 753, 755 (Fla. 1st DCA 2010).
> Here, the trial court explicitly stated it was not only relying on
> counsel's stipulation to find a factual basis, but also its review
> of the court file. In review of the court file, this Court agrees
> that there was sufficient evidence to find a factual basis.
> Therefore, this Court does not find counsel acted deficiently,
> and Defendant is not entitled to relief. See Strickland, 466,
> U.S. at 697 ("[T]here is no reason for a court deciding an
> ineffective assistance claim . . . to address both components
> of the inquiry if the defendant makes an insufficient showing
> on one.").

Id. at 118-19 (record citations omitted). The First DCA per curiam affirmed the denial of

this claim without issuing a written opinion. Resp. Exs. C2; C5.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Woods is not entitled to

relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to

deference, the claim in Ground Two (D) is baseless. Initially the Court notes that law

enforcement provided the cocaine for the reverse sting operation, and Woods tested it

and approved of its quality. Resp. Ex. B1 at 2. As such, this is not an instance in which

the drugs are unknown to law enforcement until the actual transaction occurs; instead,

the cocaine used here was already property of law enforcement, which would undermine any suggestion that it was not actual cocaine. In any event, the Court finds Woods' sworn representations to the circuit court render this claim meritless. Woods specifically admitted to committing the crime charged in count one, while also representing that he was satisfied with his counsel's representation. See Smith, 41 So. 3d at 1040. Indeed, by merely entering the guilty plea, Woods waived any right to have his counsel investigate or put forward a defense. Id. Accordingly, as Woods waived his right to have counsel defend the charges and based on his sworn representations to the circuit court, the Court finds Woods is not entitled to relief on Ground Two (D).

### D. Ground Three

In his last ground for relief, Woods maintains that newly discovered evidence exists because he discovered that FDLE did not have any lab reports relating to his case or, more specifically, the chemical analysis of the cocaine. Petition at 31-33. According to Woods, he would not have entered the guilty plea had he known there were no FDLE lab reports. Id. at 32.

Respondents assert that this claim is unexhausted because Woods never presented this as a federal constitutional claim in state court; instead, relying solely on state law to support his arguments below. Response at 14-16. In his Reply, Woods concedes that he did not exhaust this claim, although he reserves the right to object should this Court determine otherwise. Reply at 40. The Court finds Woods has not demonstrated cause or prejudice to excuse this procedural default, and, likewise, has failed to establish a fundamental miscarriage of justice would occur if the Court did not

review the claim on the merits. Accordingly, the claim in Ground Three is due to be denied as procedurally defaulted.

Nevertheless, even if properly exhausted and presented as a federal claim, the Court finds Woods is not entitled to relief. The Court notes that "federal habeas relief is available on the grounds of newly discovered evidence only where the evidence bears on the constitutionality of the petitioner's detention." <u>Swindle v. Davis</u>, 846 F.2d 706, 707 (11th Cir. 1988). In fact, "[n]ewly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief." <u>Id.</u> Here, Woods' allegations of the lack of FDLE reports regarding the testing of the cocaine law enforcement used in the reverse sting does not bear on the constitutionality of his detention. The lack of testing is not exculpatory, and he has not established any constitutional deficiency in his convictions and sentences because of it. By entering his plea, Woods interrupted the criminal proceedings against him, waiving and ending any further investigation on part of his counsel or the State. Therefore, he is not entitled to federal habeas relief. <u>See</u> <u>id.</u>

Additionally, Woods has not presented any actual new evidence, instead he relies on a letter from FDLE stating that they do not have any reports related to his case. Woods has not shown why these records did not exist and his representation of the response he received to his public record requests does not show whether the records were lost, destroyed, or never existed because the evidence was never presented to FDLE for testing. Petition at 31. As such, his claim is speculative and cannot form the basis of federal habeas relief. Moreover, due diligence on the part of counsel or Woods could have ascertained this fact prior to entry of the plea. <u>See</u> <u>Jones v. State</u>, 591 So. 2d 911,

915-916 (Fla. 1991) (quoting Hallman v. State, 371 So. 2d 482, 485 (Fla. 1979)). Therefore, this claim is not newly discovered evidence. For the above stated reasons, the claim in Ground Three is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Woods seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Woods "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Woods appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of May, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Thomas Lee Woods #J38368
        Counsel of record